IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| **ROBERT BELT # 00589455,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | NO. 1:24-cv-00085 |
| v. | ) | |
| | ) | JUDGE CAMPBELL |
| **SOUTH CENTRAL CORRECTIONAL** | ) | MAGISTRATE JUDGE HOLMES |
| **FACILITY,** *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This is a pro se prisoner civil rights case filed by Robert Belt, an inmate of the South Central Correctional Facility ("SCCF") in Clifton, Tennessee. (Doc. No. 1).

Plaintiff has submitted an Application for Leave for Proceed In Forma Pauperis ("IFP Application"). (Doc. No. 2). The Court must resolve the filing fee before moving to the required screening of the prisoner complaint.

**I. FILING FEE**

Under the Prisoner Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(a), a prisoner bringing a civil action may be permitted to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a). From a review of Plaintiff's IFP Application and supporting documentation (Doc. No. 2), it appears that Plaintiff lacks sufficient financial resources from which to pay the full filing fee in advance. Therefore, his IFP Application (Doc. No. 2) is **GRANTED**.

Under § 1915(b), Plaintiff nonetheless remains responsible for paying the full filing fee. The obligation to pay the fee accrues at the time the case is filed, but the PLRA provides prisoner-plaintiffs the opportunity to make a "down payment" of a partial filing fee and to pay the remainder

1

in installments. Accordingly, Plaintiff is hereby assessed the full civil filing fee of $350, to be paid as follows:

(1) The custodian of Plaintiff's inmate trust fund account at the institution where he now resides is **DIRECTED** to submit to the Clerk of Court, as an initial payment, "20 percent of the greater of – (a) the average monthly deposits to Plaintiff's account; or (b) the average monthly balance in Plaintiff's account for the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(b)(1).

(2) After the initial filing fee is fully paid, the trust fund officer must withdraw from Plaintiff's account and pay to the Clerk of this Court monthly payments equal to 20% of all deposits credited to Plaintiff's account during the preceding month, but only when the amount in the account exceeds $10. Such payments must continue until the entire filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

(3) Each time the trust account officer makes a payment to this court as required by this Order, he or she must print a copy of the prisoner's account statement showing all activity in the account since the last payment made in accordance with this Order and submit it to the Clerk along with the payment. All submissions to the Court must clearly identify Plaintiff's name and the case number as indicated on the first page of this Order, and must be mailed to: Clerk, United States District Court, Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

The Clerk of Court is **DIRECTED** send a copy of this Order to the administrator of inmate trust fund accounts at the SCCF to ensure that the custodian of Plaintiff's inmate trust account complies with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian of his inmate trust fund

2

account **MUST** ensure that a copy of this Order follows Plaintiff to his new place of confinement for continued compliance.

## II. PLRA SCREENING OF THE COMPLAINT

The complaint[1] is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.* § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in Section 1915(e)(2)(B). *Id.* § 1915A(b).

The court must construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us

---

[1] Plaintiff filed an Amended Complaint on October 9, 2024. (Doc. No. 5). The Amended Complaint does not comply with Local Rule 15.01, which requires amended pleadings to "restate the entirety of the pleading with amendments incorporated, rather than merely reciting the amended sections." M.D. Tenn. Local R. 15.01(b). Thus, the Court will screen the original complaint. In any event, the Amended Complaint does not seek to add or remove any claims or Defendants to this action.

to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## A. Section 1983 Standard

Plaintiff brings his claims under 42 U.S.C. § 1983 which creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under Section 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Panama Heights*, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983.

## B. Facts Alleged in the Complaint

The allegations of the complaint are assumed true for purposes of the required PLRA screening.

The complaint alleges that, on February 27, 2024 at the SCCF, Plaintiff was on protective custody ("PC") status and was housed in a PC-only pod. Defendant Dexter White moved a non-PC inmate into the pod "a day or two" before that date, an action unauthorized by Unit Manager Killingworth. (Doc. No. 1 at 8). The non-PC inmate is a member of the same gang "that's the reason [Plaintiff] is on PC . . . ." (*Id.*) Plaintiff previously had filed a grievance regarding that inmate "for picking and taunting [Plaintiff] with gang slur/slang." (*Id.*)

Plaintiff began "getting neg[a]tive vibes from the non-PIC inmate and seen [sic] that he had (2) large knives clutching and looking at [Plaintiff]." (*Id.* at 9). That inmate was wearing a hood and gloves. Plaintiff told Defendant Ashton Thomas that Plaintiff felt threatened, but Defendant Thomas took no action. Plaintiff asked another inmate for assistance, and another inmate provided Plaintiff with a small knife.

4

When Plaintiff entered his cell, the non-PC inmate followed him. An altercation ensued, and the non-PC inmate "mounted" Plaintiff and stabbed him six times. (*Id*.) Plaintiff sustained numerous injuries, including a punctured lung.

Defendant Thomas was present for the entire altercation and did not intervene. Defendant Conner Robinson "stood and watch[ed] for a good minute too it seemed until [Plaintiff] fell then [Robinson] tried to intervene but the damage was done already." (*Id*. at 10).

Plaintiff seeks compensatory and punitive damages in an amount "not less than $2,000,000.00." (*Id*. at 13). Plaintiff also seeks permanent injunctive relief.

## C. Analysis

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. The complaint names as Defendants SCCF; CoreCivic of Tennessee, LLC; Sergeant[2] Dexter White; Case Manager and Acting Sergeant Conner[3] Robinson; and Correctional Officer Ashton Thomas.

First, SCCF is a building; it is not a "person" who can be sued under 42 U.S.C. § 1983. *Plemons v. CoreCivic Admin. Headquarters*, No. 3:18-cv-00498, 2018 WL 4094816, at *3 (M.D. Tenn. Aug. 28, 2018) (quoting *McIntosh v. Camp Brighton*, No. 14-CV-11327, 2014 WL 1584173, at *2 (E.D. Mich. Apr. 21, 2014) (collecting cases establishing that prison facilities are inappropriate defendants under Section 1983)). Thus, the complaint fails to state a Section 1983 claim upon which relief can be granted against SCCF, and all claims against SCCF will be dismissed.

---

[2] The complaint alleges that Defendant White was demoted as a result of the allegations set forth in the complaint. (Doc. No. 1 at 3).

[3] The docket lists this Defendant's name as Connor Robinson, but the complaint identifies this Defendant as Conner Robinson. (*See* Doc. No. 1 at 2).

Next, with respect to Defendant "CoreCivic of Tennessee, LLC", courts in this district have recognized that "CoreCivic" is the private corrections management firm that operates various prisons within the state. *See Collins v. Trousdale Turner Correctional Ctr.*, No. 3:24-cv-00573, 2025 WL 1095373, at *1 n.1 (M.D. Tenn. Apr. 11, 2025) (collecting cases). The proper defendant in this matter is therefore CoreCivic. *Id*.

The complaint also names as Defendants officers White, Thomas, and Robinson in their official capacities. (Doc. No. 1 at 2-3). Because "[o]fficial-capacity suits . . . 'generally represent [ ] another way of pleading an action against an entity of which an officer is an agent,'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)), Plaintiff's official capacity claims against Defendants White, Thomas, and Robinson are actually brought against their employer, CoreCivic. It would be redundant to maintain official capacity claims against multiple Defendants representing the same entity. *See Jackson v. Shelby Cnty. Gov't*, No. 07-6356, 2008 WL 4915434, at *2 (6th Cir. Nov. 10, 2008) (affirming dismissal of redundant official-capacity claims). Thus, the Court will dismiss the official capacity claims against the individual Defendants as redundant of the claims against CoreCivic.

Because it performs a traditional state function in operating a state prison, CoreCivic acts under the color of state law. *Street v. Corr. Corp. of Am.,* 102 F.3d 810, 814 (6th Cir. 1996). CoreCivic may be liable under Section 1983 "if its official policies or customs resulted in injury to the plaintiff." *O'Brien v. Mich. Dep't of Corr.*, 592 F. App'x 338, 341 (6th Cir. 2014); *see also Mason v. Doe*, No. 3:12CV-P794-H, 2013 WL 4500107, at *1 (W.D. Ky. Aug. 21, 2013) (collecting cases) ("a private corporation may be liable under § 1983 when an official policy or custom of the corporation causes the alleged deprivation of a federal right"). To hold CoreCivic

liable, Plaintiff cannot rely on the theory of respondeat superior or vicarious liability. *See Street*, 102 F.3d at 818. Liability attaches only if CoreCivic's policies were shown to be the "moving force" behind Plaintiff's injuries. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

Here, the complaint makes no such allegation regarding a "policy or custom" of CoreCivic. Thus, the complaint fails to state a claim against CoreCivic, and all claims against CoreCivic will be dismissed.

As for the remaining Defendants, Plaintiff seeks to impose constitutional liability against those individuals because they allegedly failed to protect Plaintiffs from an attack by a fellow inmate and/or failed to intervene in an ongoing attack. The complaint identifies Plaintiff as a convicted prisoner, not a pretrial detainee. This distinction is relevant because the Eighth Amendment's guarantee against cruel and unusual punishment applies to convicted prisoners, while the Fourteenth Amendment's Due Process Clause guarantees the rights of pretrial detainees to be free from punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

The Eighth Amendment to the United States Constitution requires officers to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). Although prison officials have a duty to protect prisoners from assault by other prisoners, the Supreme Court has recognized that jail and prison officials cannot be expected to prevent every assault before it occurs or to stop every assault in progress before injuries are inflicted. Thus, "a prison official may be held liable under the Eighth Amendment . . . only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. That is, the inmate must show both that the risk of harm is sufficiently "serious," an

objective inquiry, and that prison officials acted with "deliberate indifference" to inmate health or safety, a subjective inquiry. *Id*. at 837-38; *Helling v. McKinney*, 509 U.S. 25, 32 (1993).

Here, construed liberally, the complaint alleges that Defendants White, Robinson, and Thomas were aware that a particular non-PC inmate posed a threat to Plaintiff's safety and therefore should not be housed in the same housing pod as Plaintiff. The complaint further alleges that Plaintiff had expressed concerns about his safety around this inmate on at least one prior occasion and, on the day of the incident, Plaintiff specifically expressed concerns to Defendant Thomas about that inmate. Plaintiff's allegations, if proven, could support a finding that Plaintiff faced a risk of harm sufficiently serious to satisfy the objective component of a failure-to-protect claim.

Additionally, liberally construing the complaint, Plaintiff alleges that Defendant Thomas knew about the substantial risk of harm facing Plaintiff but disregarded that risk by allowing the non-PC inmate to remain in the PC pod. Plaintiff allegedly told Defendant Thomas that the non-PC inmate, who was wearing a hood and gloves, had two knives and was staring at Plaintiff. Plaintiff also alleges that Defendant Thomas knew that the inmate was affiliated with the same gang that Plaintiff had been placed in protective custody to avoid and that Plaintiff had filed a grievance against this inmate previously for taunting Plaintiff. *Cf. Morgan by next friend Morgan v. Wayne Cnty., Mich.,* 33 F.4th 320, 327 (6th Cir. 2022) ("[a]n official who was unaware of a substantial risk may not be held liable under the Eighth Amendment."); *Young v. Phillips*, No. 3:22-CV-295-TAV-JEM, 2022 WL 4360848, at *3 (E.D. Tenn. Sept. 20, 2022) (finding no viable failure to protect claim under Section 1983 where plaintiff failed to allege that defendant "knew or should have known . . . that [assailant] had any ill intent toward [plaintiff]"). Plaintiff therefore satisfies the subjective component as well against Defendant Thomas, and the failure-to-protect

8

claim against Defendant Thomas in his individual capacity survives the required PLRA screening. Because the facts surrounding the other Defendants' knowledge are not yet fully developed, the failure-to-protect claims against Defendants White and Robinson in their individual capacities will not be dismissed at this juncture.

With regard to Plaintiff's claims based on Defendants Thomas and Conner's failure to stop an ongoing attack, the Sixth Circuit in *Patmon v. Parker*, 3 F. App'x 337, 338 (6th Cir. 2001), and this Court, *Hamby v. Parker*, No. 3:17-cv-01596, 2018 WL 2264418, at *3 (M.D. Tenn. May 15, 2018), have noted that there is no duty under the Eighth Amendment to stop every assault in progress before injuries are inflicted. And prison guards have no constitutional duty to intervene in an armed assault by an inmate when the intervention would place the guard in danger of physical harm. *Patmon*, 3 F. App'x 337, 338. Thus, constitutional liability does not arise merely because an officer fails to act immediately or does not engage in every possible option in response to an inmate assault. *See Bowers v. Power*, No. 3:17-cv-01599, 2018 WL 1794730 at *7 (M.D. Tenn. April 16, 2018) (Crenshaw, J.) (finding that prison inmate did not state a failure to protect claim based upon mere allegation that prison guard failed to intervene to prevent attack on inmate by an unidentified assailant); *Brittain v. Clemons*, No. 4:09CV-P123-M, 2011 WL 2471587 (W.D. Ky., June 21, 2011) (defendant entitled to summary judgment based on failure to show subjective intent to cause harm, even assuming that defendant officer delayed for a few minutes prior to radioing for assistance to break up active prison fight).

Here, the complaint alleges that the inmate who attacked Plaintiff did so using two knives. As noted above, prison guards have no constitutional duty to intervene in armed assault by an inmate when the intervention would place the guard in danger of physical harm. Thus, the complaint fails to state a Section 1983 claim upon which relief can be granted based on Defendants

9

Thomas and Conner's failure to intervene in the inmate attack of Plaintiffs. Those claims will be dismissed.

### III. CONCLUSION

Having conducted the screening of the complaint required by the PRLA, the Court finds as follows.

The official capacity claims against Defendants Thomas, White, and Robinson are redundant of Plaintiff's claims against CoreCivic and therefore are **DISMISSED**.

The complaint fails to state Section 1983 claims upon which relief can be granted as to Defendants SCCF AND CoreCivic. These claims and Defendants are therefore **DISMISSED**.

The Section 1983 claims against Defendants Thomas, White, and Robinson in their individual capacities based on their failure to intervene in an ongoing attack fail to state Section 1983 claims upon which relief can be granted. Those claims are **DISMISSED**.

However, the Section 1983 claims Defendants Thomas, White, and Robinson in their individual capacities based on a failure to protect Plaintiff state colorable claims under Section 1983 and shall proceed for further development.

Accordingly, the Clerk is **DIRECTED** to send Plaintiff a service packet (a blank summons (AO 440) and USM 285 form) for each remaining Defendant (Thomas, White, and Robinson). Plaintiff **MUST** complete the service packets and return them to the Clerk's Office within **30 DAYS** of the entry of this Order. Failure to do so may result in the dismissal of this case. Upon return of the properly completed service packets, the Clerk is **DIRECTED** to issue summonses to the U.S. Marshals Service for service on those Defendants. Fed. R. Civ. P. 4(b) and 4(c)(3).

Pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B), this action is **REFERRED** to the Magistrate Judge to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pre-trial, non-dispositive motions, to issue a Report and

10

Case 1:24-cv-00085   Document 8   Filed 09/12/25   Page 10 of 11 PageID #: 55

Recommendation on all dispositive motions, and to conduct further proceedings, if necessary, under Rule 72(b), Fed. R. Civ. P., and the Local Rules of Court.

The Court's determination that the complaint states a colorable claim for purposes of this initial screening does not preclude the Court from dismissing any claim at any time for seasons set forth in 28 U.S.C. § 1915(e)(2), nor does it preclude any Defendant from filing a motion to dismiss any claim under Federal Rule of Civil Procedure 12.

Plaintiff is forewarned that his prosecution of this action will be jeopardized if he should fail to keep the Clerk's Office informed of his current address.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE